**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**CASSANDRRA M.,**

                **Plaintiff,**                      **21-CV-1307Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all

proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #10.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), benefits with

the Social Security Administration ("SSA"), on November 21, 2019, at the age of 36,

alleging disability due to bipolar disorder, Crohn's disease, fibromyalgia, anxiety, post-

traumatic stress disorder ("PTSD"), and long-term memory loss. Dkt. #4, pp.873-874.

On April 13, 2021, plaintiff appeared by telephone conference call with

counsel and testified, along with an impartial vocational expert ("VE"), Jay Steinbrenner,

at an administrative hearing before Administrative Law Judge ("ALJ"), John Costello. Dkt. #4, pp.841-871. At the outset of the hearing, plaintiff's representative advised that all of the requested medical records had been received and denied that there was a need to develop any other medical evidence. Dkt. #4, pp.845-846. Plaintiff's representative acknowledged the absence of formal medical opinions and advised the ALJ that he had requested medical opinions from plaintiff's mental health providers, but received no response. Dkt. #4, pp.846 & 862. The ALJ noted a number of attempts to schedule a consultative examination. Dkt. #4, p.847.

Plaintiff testified that she applied for disability benefits because her health was not getting any better and she continued to struggle with mental health issues no matter how much medication she was prescribed. Dkt. #4, p.850. Prior to the pandemic, plaintiff testified that she was attending group classes three days a week and met with her mental health counselor once a week and the doctor every two weeks. Dkt. #4, pp.851-852. Since March of 2020, all communications were by telephone and plaintiff was meeting with her counselor every two weeks and with her doctor every eight weeks. Dkt. #4, p.852.

Plaintiff testified that between her mood swings and depression, she found it very hard to function. Dkt. #4, p.853. When her mood is low, she doesn't get out of bed, doesn't eat and doesn't want anything to do with anybody. Dkt. #4, pp.853-854. When her mood is high, plaintiff testified that she is "all over the place." Dkt. #4, p.854. Plaintiff explained that her depression is exhausting and causes her to "just shut

down." Dkt. #4, p.854. She testified that her short term memory isn't good anymore and her brain feels very foggy, making it very difficult to concentrate. Dkt. #4, p.855. Plaintiff focused on coping skills to address her mental health symptoms, explaining that although her mental health was "not great," it was "better than it has been." Dkt. #4, p.856.

Plaintiff testified that she was a recovering heroin addict and was very compliant with her Suboxone treatment. Dkt. #4, pp. 856-857. In addition to her mental health symptoms, plaintiff suffered severe abdominal pain and nausea from Crohn's disease, which bothered her daily and flared about once a week. Dkt. #4, p.859. She constantly experienced brain fog and nerve pain from her fibromyalgia, for which she was prescribed Gabepentin. Dkt. #4, p.860. Plaintiff's driver's license was suspended; she takes the bus when she needs to, but dreads doing it because it gives her extreme anxiety. Dkt. #4, p.863. She is able to complete household chores, albeit slowly and with physical pain. Dkt. #4, p.863. Plaintiff is a high school graduate. Dkt. #4, p.848.

When asked to assume an individual with plaintiff's age, education and past work experience who was capable of performing sedentary work and was limited to simple, routine tasks requiring no more than occasional decision making with no more than occasional interaction with supervisors, coworkers and the general public, the VE testified that plaintiff could work as a table worker, semi-conductor bonder and surveillance systems monitor, each of which were unskilled, sedentary positions. Dkt.

#4, pp.867-868. If the individual was off task 15% or more of the work day or absent more than two days per month, the VE testified that there would be no jobs available. Dkt. #4, p.868.

The ALJ rendered a decision that plaintiff was not disabled on May 6, 2021. Dkt. #4, pp.19-29. The Appeals Council denied review on October 28, 2021. Dkt. #4, p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on December 23, 2021. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since her application date of November 21, 2019; (2) plaintiff's fibromyalgia, bipolar disorder, depressive disorder, anxiety disorder, and post-traumatic stress disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform sedentary work with the following limitations: simple, routine tasks with occasional decision making and interaction with supervisors, coworkers and the public; and (5) plaintiff was capable of working as a table worker, semi-conductor bonder, and surveillance system monitor, each of which were unskilled, sedentary positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #4, pp.22-28.

Plaintiff argues that the ALJ improperly crafted plaintiff's RFC from his own lay interpretation of the raw medical record and that it was error for the ALJ to determine plaintiff's RFC without the benefit of medical opinion evidence, particularly given the significance of her mental impairment. Dkt. #7-1, pp.11-15.  Plaintiff also argues that the ALJ did not properly assess plaintiff's subjective complaints and mischaracterized plaintiff's testimony regarding her activities of daily living and evidence of ongoing changes to her prescription medication. Dkt. #7-1, pp.15-19.

The Commissioner responds that the ALJ properly considered the totality of evidence in the record and reasonably concluded that plaintiff was capable of performing simple, unskilled work at the sedentary exertion level. Dkt. #8-1, p.8. The

Commissioner further argues that plaintiff should not be able to argue about the

absence of a medical source opinion when she refused to attend consultative

examinations. Dkt. #8-1, pp.12-13. The Commissioner argues that the ALJ restricted

plaintiff to sedentary work based upon her subjective complaints despite the absence of

abnormal findings upon examination by medical providers and that the ALJ properly

considered the record of evidence, including plaintiff's activities of daily living, in

declining to impose additional restrictions. Dkt. #8-1, pp.14-19.


In most cases, "an ALJ is not qualified to assess a claimant's RFC on the

basis of bare medical findings, and as a result an ALJ's determination of RFC without a

medical advisor's assessment is not supported by substantial evidence." *Ortiz v. Colvin*,

298 F. Supp.3d 581, 586 (W.D.N.Y. 2018). In the instant case, however, the ALJ

explained that:

> At the hearing, the representative indicated that he had not
> asked nor was he now asking me to develop any additional
> medical evidence. He stated that he sought medical
> opinions from appropriate medical providers . . . and [they]
> declined to provide the same."

Dkt. #4, p.19. The ALJ also noted that the SSA had complied with its duty to develop

the record by scheduling plaintiff for consultative examinations on three separate dates,

and had repeatedly contacted plaintiff's representative in an effort to secure her

appearance, but plaintiff failed to attend. Dkt. #4, p.19. The evidence of record confirms

numerous communications with plaintiff and counsel regarding outstanding consultative

examinations. Dkt. #5, pp.22-123. Having failed to attend the consultative examinations

arranged by the SSA to assess plaintiff's functioning, plaintiff will not be permitted to

argue that the ALJ failed to develop the record . *Mallon v. Comm'r of Soc. Sec.*, 18-CV-712, 2020 WL 263654, at *1 (W.D.N.Y. Jan. 17, 2020).

With respect to plaintiff's physical impairments, the state agency consultant determined that there was insufficient evidence to rate plaintiff's impairments because a physical examination with range of motion and positive trigger points was necessary to make a full medical determination and was not present in the medical record. Dkt. #5, p.441. The ALJ also noted that plaintiff failed to pursue treatment for complaints of ongoing back pain[1] and that lab work ruled out inflammatory conditions. Dkt. #4, p.26. Upon consideration of her reports of pain and long standing prescription for Gabepentin, however, the ALJ limited plaintiff to sedentary work. Dkt. #4, p.26. Given the absence of abnormal physical examinations, the ALJ declined to impose any further postural or manipulative restrictions. Dkt. #4, p.26. Upon review of the record of evidence, the Court finds no basis for a more restrictive RFC. *See Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp.3d 639, 650 (W.D.N.Y. 2020) (RFC assessment supported by substantial evidence where ALJ considered, *inter alia*, the medical evidence, plaintiff's treatment history and plaintiff's allegations).

With respect to plaintiff's mental impairments, the ALJ noted that detailed mental status examinations in the record "were consistently normal except for periods

---

[1] For example, plaintiff does not appear to have obtained a prescribed x-ray and a Medication Assisted Treatment ("MAT"), note dated March 23, 2021 recommends that plaintiff "continue to look into her back pain more and find other modalities that will be helpful" because continuing to increase her dose of buprenorphine will not really help plaintiff's back pain that much since "opiates can only do so much for chronic pain." Dkt. #4, p.741.

of anxious mood and fair insight and judgment" and that plaintiff "often denied lability or symptoms." Dkt. #4, p.25. The ALJ also noted that individual therapy notes from 2020 onward were typically benign. Dkt. #4, p.25. The ALJ determined that plaintiff was moderately limited in her ability to understand, remember and apply information; interact with others; concentrate, persist and maintain pace; and adapt or manage for herself. Dkt. #4, p.23. The ALJ then determined that although plaintiff's mental status examinations did not strongly support her allegations of memory loss, interpersonal issues, cognitive difficulties, mood lability, or inability to complete tasks, such symptoms could be accounted for by limiting plaintiff to simple work with occasional contact with others, and occasional decision making. Dkt. #4, p.27.

Upon review of the record of evidence, the Court agrees that, despite occasional reports of increased depressive/anxiety symptoms, plaintiff generally reported that her mental health was stable, with mental status examinations within normal limits and interactions with mental health providers generally focused on supporting plaintiff's abstinence. Dkt. #4, pp. 486, 522 & 714; Dkt. #5, pp. 610, 662, 671. On December 24, 2019, for example, plaintiff was observed to be "in a good mood, cooperative and engaged, coherent, logical, good grooming, good eye contact, oriented." Dkt. #4, p.397. On June 3, 2020, screening results indicated plaintiff's depression and anxiety levels were low. Dkt. #4, p.507. On October 14, 2020 and November 17, 2020, plaintiff reported that she was looking for employment. Dkt. #4, p.714 & Dkt. #5, p.640. Given that the Second Circuit has repeatedly held that moderate limitations in mental functioning do not preclude a plaintiff's ability to perform

unskilled work, and that simple, unskilled work with limited social interaction is sufficient to accommodate moderate mental limitations, the Court finds that the ALJ's mental RFC is supported by substantial evidence. *See Allisa P. v. Comm'r of Soc. Sec.,* 21-CV-556, 2024 WL 278227, at *10 (W.D.N.Y. Jan. 25, 2024); *Kyle L. C. v. Comm'r of Soc. Sec.*, 21-CV-6097, 2023 WL 1858079, at *6 (W.D.N.Y. Feb. 9, 2023); *Mayer v. Comm'r of Soc. Sec.*, 18-CV-62, 2019 WL 2266795, at *5 (W.D.N.Y. May 28, 2019).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #8), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
               **February 23, 2024**

                              s/ H. Kenneth Schroeder, Jr.
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**